Battle, J.
 

 The plaintiff alleges that the defendant Tilom-as Lytle, being insolvent, sold all of his slaves for cash, and placed the money, or the greater part of it, in the hands of his children, with a view to assist them, and benefit himself,
 
 *418
 
 and thereby to defraud bis creditors ; tbat, among other gifts of money, be made one to bis daughter, the defendant Mary Godsey, -wherewith she purchased a small tract of land of one James Murray; and the plaintiff alleging that he is a judgment creditor, whose debt cannot be otherwise satisfied, insists that he is entitled, in Equity, to follow his debtor’s money and have his debt satisfied out of the tract of land in which the money has been so fraudulently invested.
 

 The defendants, father and daughter, both deny these allegations ; and the daughter expressly states that she bought the land with her own money, part whereof, to wit, $25, she earned by the labor of herself and her children, and the residue, to wit, $100, she borrowed of one William G. Davis; that she gave her note for the same, which she supposes is still in the hands of his personal representative, he having since died.
 

 The plaintiff’s equity is a plain one, if his case be found to be supjoorted by the requisite proofs. See
 
 Gentrey
 
 v.
 
 Harper,
 
 ante, 177, and the cases there cited.
 

 The positive denial of the defendants makes it necessary that the plaintiff should produce something more than the testimony of a single witness. To make his case more difficult to be supported, the defendant Mary Godsey has produced the depositions of
 
 William King,
 
 and
 
 William Blessed
 
 ; the former of whom says, he heard her request, and Davis promise, the loan spoken of, and the latter declares that he was present and saw the money counted out to her, upon which she gave her note therefor, with her brother, Archibald Lytle, as surety. There is no proof on file to impeach the characters of these witnesses, though it appears, from their depositions, that they are both unlearned men, as each subscribes his name by making his mark instead of writing it. Dut notwithstanding all this testimony, we are entirely satisfied by the proof, introduced on the part of the plaintiff, that the defendant Mary Godsey did not, because she could not, without the aid of her father, raise the money with which the land in question was purchased. Three or four witnesses testify that,
 
 *419
 
 about the time when the transaction toot place, Mary Godsey lived upon a tract of land which her father then owned, and that she was then, and had been for several years before, a poor woman with a family of children, whom she could with difficulty support; and one of them states that she was very poor, and had to be supported by her father; and they all say that she was not able to make more money than had to be expended for her daily necessities. It is admitted by the defendants themselves that, in the year 1849, the father was broken up, and all his property, except his slaves, taken and sold under execution, for the payment of his debts. His slaves were sold by himself, and according to the testimony of the witness Johnson, for about $3,300. Of the disposition of this large sum, he gives no other account in his answer than that he “ applied it honestlyand his daughter says, that about $1100 were applied to the payment of a security debt, which she mentions, and of the residue she knows nothing. Prior to this period, it appears clearly from the proof, that she and her brother Archibald were very poor, and in embarrassed circumstances, but soon afterwards they had money enough to buy property at execution sales, and even to lend.
 

 The testimony shows further, that Wm. G. Davis removed to Yirginia before his death, and neither the agent whom he appointed to settle his business in this State, nor his administrator in Yirginia, has ever seen or heard of the note which Mary Godsey says she gave for the borrowed money. In addition to this, one witness,
 
 Miles D.
 
 King, swears expressly that Thomas Lytle told him, on a certain occasion, that he was about to be broken up, and that he wished to do something for his children. All the facts and circumstances thus deposed to by the witnesses for the plaintiff, and in contradiction of which, not a particle of testimony is offered by the defendants, lead our minds irresistably to the conclusion, that the story of the loan made by Davis to the defendant Mary God-sey, is either entirely without foundation in fact, or was a contrivance got rip to deceive the witness Blessed; and that, in truth, all the money which Mary Godsey had, and with
 
 *420
 
 •which she paid for the land in question, was obtained directly, or indirectly, from her father. The result is that the plaintiff has a clear equity to have the land subjected to the payment of his debt, and he may have a decree to that effect.
 

 PeR Oubiam. Decree accordingly.